UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:04-CV-87-M

CITY OF OWENSBORO and                                          PLAINTIFFS
CITY UTILITY COMMISSION OF THE CITY
OF OWENSBORO, KENTUCKY, a/k/a
OWENSBORO MUNICIPAL UTILITIES

V.

KENTUCKY UTILITIES COMPANY                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for partial summary judgment by Plaintiffs, City of Owensboro ("City") and Owensboro Municipal Utilities ("OMU") [DN 48] and Defendant, Kentucky Utilities Company ("KU") [DN 26]. Plaintiffs filed suit on July 26, 2004 in state court seeking a declaration of several contract rights. KU removed to federal court on the grounds of federal question jurisdiction. Both parties have moved for partial summary judgment with respect to the termination provisions of the contract and oral arguments were held on July 19, 2005.

This matter is now ripe for decision. For the reasons set forth below, Plaintiffs' motion for partial summary judgment [DN 48] is **granted** and KU's motion for partial summary judgment [DN 26] is **denied**.

## I. LEGAL STANDARD

The summary judgment standard requires that the Court find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts of this case are largely undisputed, and as both parties have moved for summary judgment, the Court reviews the uncontested facts.

## II. BACKGROUND

This case arises out of a longstanding wholesale electricity contract between the City, OMU, and KU. The original contract was entered into in 1960 and governed the rates, terms, and conditions of service for wholesale electric energy between the two companies. It has been a mutually beneficial contract, and has been amended several times from 1968 to 1998 (collectively the "Contract"). The 1960 contract called for the construction of a new generating unit, now known as the Elmer Smith Generating Station ("ESGS"). It also governed the electricity that ESGS would produce. According to the 1960 agreement, the City and OMU would finance, construct, own and operate ESGS.

The contract allowed KU to purchase excess power at cost in exchange for the payment of a percentage of the annual debt service on the bonds. Various changes in the relationship between OMU and KU have spawned this litigation. The City and OMU filed suit against KU in state court seeking a declaration of rights concerning several issues under the Contract. KU subsequently removed the case to this court.

The issue before the Court involves the termination provisions of the Contract. The original 1960 agreement, the 1969 supplemental agreement, and the 1991 supplemental agreement each contain some reference to the termination of the Contract between OMU and KU. The original 1960 agreement reads in pertinent part:

> ARTICLE VII
> Miscellaneous
>
> Section 1. Term of agreement. This agreement shall expire on January 1, 1991, unless the parties extend the term hereof by mutual agreement. The City and the Commission shall have the right to terminate the agreement after ten years provided three years' written notice thereof is given to the Company. The Company shall have the right to terminate the agreement by three years' written notice only if the peak load of the City's entire system at any time during the 12 full months next preceding the giving of notice, plus 25% of the amount thereof, exceeds 80% of the established generating capability of Station 2.

Additionally, Article VIII, Section 6 of the original 1960 Contract provides:

> Section 6. Waiver. The failure of either party to insist in any or more instances upon strict performance of any of the provisions of this agreement or to take advantage of any of its rights hereunder shall not be construed as a waiver of any such provisions or the relinquishment of any such rights, but the same shall continue and remain in full force and effect.

In 1969, the parties revised the original agreement with a supplemental agreement. In pertinent part, the 1969 agreement stated:

3

ARTICLE VIII
Miscellaneous

Section 1 of Article VIII of the 1960 Contract shall be revised to read as follows:

Section 1 - Term of Agreement. This agreement shall expire on the final maturity date of the bonds issued by City to finance Unit 2, unless the parties extend the term hereof by mutual agreement. The City and the Commission shall have the right to terminate the agreement ten years after January 1, 1974, provided four years' written notice thereof is given the Company. The Company shall have the right to terminate the agreement by three years' written notice only if the peak load of the City's entire system at any time during the 12 full months next preceding the giving of notice, plus 25% of the amount thereof, exceeds 80% of the established generating capability of Elmer Smith Generating Station.

The final pertinent supplement was created in 1991. The 1991 Supplemental Agreement reads:

SECTION 8. TERMINATION of the CONTRACT. The Contract shall be extended until the latest final payment date specified in the New Debt unless sooner terminated or further extended by a subsequent written agreement of the Parties. If prior to the final payment of the New Debt, the Commission's system demand and reserve reach 80% of the St. 2 net capacity, the Company or Commission may at its option terminate the Contract upon four (4) years written notice....

SECTION 11. THE CONTRACT APPLIES EXCEPT AS HEREIN MODIFIED. All of the terms and conditions of the September 30, 1960 contract between the Parties hereto as supplemented and amended to the date of the 1991 Supplemental Agreement are incorporated into this 1991 Supplemental Agreement by reference, and shall apply to the obligations, duties, and liabilities of the Parties to this 1991 Supplemental Agreement except as modified, changed or eliminated by the specific terms and conditions contained herein.

The City and OMU contend that under the 1969 amendment they have the unconditional right to terminate the contract by giving four years notice. KU disagrees.

4

They insist that under the terms of the 1991 Supplemental Agreement only KU and OMU have a right to terminate the agreement and the exercise of that right is conditioned on the system's demand and reserve reaching a certain threshold.

### III.  DISCUSSION

In 1969, the parties explicitly replaced the 1960 termination section of the contract: "Section 1 of Article VIII of the 1960 Contract shall be revised to read as follows."  Under the 1969 Agreement, both "the City [City of Owensboro] and the Commission [the board of Owensboro Municipal Utilities]" had "the right to terminate the agreement ten years after January 1, 1974, provided four years' written notice thereof is given the Company [Kentucky Utilities]."  In other words, both parties agree that after January 1, 1984, the City of Owensboro and OMU had an unconditional right to terminate with four years' written notice to KU.

The primary question before the Court is whether the 1991 Agreement terminated this unconditional right as urged by KU.  Under the 1991 supplemental agreement, OMU was granted a right to terminate with four years' written notice but only if the capacity requirements were met.  OMU contends that this 1991 grant was a separate, additional right granted only to OMU and that the prior language granting both OMU and the City an unconditional right of termination upon four years' written notice is still in effect.  KU argues that the 1991 language was intended to replace the joint right of the City and OMU, making both parties' right of termination conditioned upon the capacity requirement and four years' written notice.  In support of this interpretation, KU contends

5

it is illogical to conclude that OMU has both an unconditional right to terminate on a mere 4 years' notice <u>and</u> a right to terminate on 4 years' notice which is conditioned on capacity requirements. KU argues that if the 1969 termination provision is given effect, the new language under Section 8 of the 1991 Agreement would be rendered superfluous and meaningless. The City and OMU respond arguing that the new language was intended to give OMU an additional right to be exercised independently of the City in the event the capacity requirements were met.

In the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. <u>Frear v. P.T.A. Industries, Inc.</u>, 103 S.W. 3d 99 (Ky. 2003). "An ambiguous contract is one capable of more than one different, reasonable interpretation." <u>Central Bank & Trust Co. v. Kincaid, Ky.</u>, 617 S.W.2d 32, 33 (1981). Yet if the terms of the contract are definite, "an otherwise unambiguous contract does not become ambiguous when a party asserts--especially post hoc, and after detrimental reliance by another party--that the terms of the agreement fail to state what it intended." <u>Frear</u>, 103 S.W. 3d at 107. The Court finds the provisions here are not ambiguous. Therefore, the Contract will be interpreted by the ordinary meaning of its terms rather than by what the parties say was intended.

Section 11 of the 1991 Agreement specifies that all of the terms of the existing contract are incorporated by reference into the supplemental agreement "except as modified, changed or eliminated by the specific terms and conditions" of the 1991

6

Agreement. Thus, the Court must decide whether Section 8 of the 1991 Agreement "modified, changed or eliminated" the right of the City and OMU to unconditionally terminate the contract with four years written notice.

Section 8 of the 1991 Agreement does not mention the City's right to terminate. The 1991 Agreement changed KU's termination right from three to four years written notice conditioned on meeting a threshold. It also provided OMU the right to terminate upon four years written notice as long as the threshold capacity requirement was met. The 1991 Agreement did not expressly eliminate the unconditional right held by the City and OMU. OMU's right was modified and changed but the Court does not agree with KU's contention that this necessarily means the 1969 termination right is eliminated and replaced. By virtue of Section 11 of the 1991 Agreement, the Court concludes that the City and OMU have an unconditional right to terminate upon notice <u>and</u> OMU has a separate right to terminate which is conditional.

The Court rejects KU's argument that the subsequent provision should control because it is later in time. KU cites several Kentucky cases for the proposition that when there are two separate, successive agreements covering the same subject matter, the agreement later in time should control. <u>See</u> <u>e.g.</u> <u>Reid v. Reid</u>, 20 S.W. 2d 1015, 1016 (Ky. 1929). This argument is not applicable here. As noted, the 1991 Supplemental Agreement incorporated previous agreements by reference. Therefore, the cumulative agreements are construed as one contract, not separate, successive agreements. Accordingly, the provisions must be harmonized if reasonably and consistently possible.

Generally, contracts are to be interpreted as a whole and all parts of the contract given effect if possible. 17A Am. Jur. 2d Contracts § 384; City of Louisa v. Newland, 705 S.W. 2d 916, 919 (Ky. 1986); see International Union of Op.Eng. v. J. A. Jones Construction Company, 240 S.W. 2d 49, 56 (Ky. 1951). As a general rule of contract law, conflicting clauses should be construed to harmonize with each other if the harmonization can consistently and reasonably be done. 17A Am. Jur. 2d Contracts § 384; see International Union, 240 S.W. 2d at 56. If two clauses are so "repugnant" to one another that there is no way that they can be harmonized, then one must fail. Id. The Court does not believe the unconditional right to terminate in favor of OMU and the City conflicts with or is repugnant to a conditional right in favor of OMU alone. While perhaps it was an unnecessary grant to OMU, both clauses can be given effect.

### III. CONCLUSION

For the foregoing reasons, the motion for partial summary judgment by Plaintiffs [DN 48] is **GRANTED** and the motion for partial summary judgment by Defendant, Kentucky Utilities Company, [DN 26] is **DENIED**.

cc:  Counsel of Record
OMU/404cv87m-PartialSJOrder2