UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:04CV-00087-JHM

CITY OF OWENSBORO, KENTUCKY and
CITY UTILITY COMMISSION OF THE CITY
OF OWENSBORO, KENTUCKY, ALSO
KNOWN AS OWENSBORO MUNICIPAL
UTILITIES                                                                                                    PLAINTIFFS

V.

KENTUCKY UTILITIES COMPANY                                                               DEFENDANT

MEMORANDUM OPINION AND ORDER

Before the Court is the City of Owensboro and OMU's (hereinafter "OMU" collectively) Motion for Protective Order (DN 183) seeking to prevent KU from obtaining certain discovery, and KU's Motion to Compel (DN 187) certain discovery from OMU. These motions address the same discovery issue. Further, KU also seeks sanctions against OMU (DN 188). OMU has filed briefs on the issues at DNs 183 and 199, 200 and 201. KU has filed briefs on the issues at DNs 189 (SEALED), 196 (SEALED), 206 and 207.

On October 16, 2006, during the deposition of Bob Carper, former OMU general manager, counsel for KU attempted to ask Carper questions about the termination provisions of the electrical power contract (the "Contract") between the parties. Counsel for OMU instructed Carper not to answer questions on this issue. The same thing occurred on November 29, 2006, during the deposition of Jim Tipton, a former employee of KU and at various times consultant to OMU, when KU's counsel attempted to ask him questions about the termination provisions of the Contract. At

the time this line of questioning began, OMU's counsel terminated the deposition, refusing to allow Tipton to be questioned on the issue.

On December 16, 2006, OMU filed the present motion for protective order (DN 183) followed shortly thereafter by KU's motion to compel (DN 187).  At issue is whether KU may have further discovery from OMU regarding the termination provisions of the contract.  This memorandum will address that issue as well as KU's motion for sanctions (DN 188).

The termination provisions of the Contract have been the subject of cross-motions for summary judgment by both KU and OMU.  On July 25, 2005, the District Court entered its Memorandum Opinion and Order (DN 74) denying KU's motion for summary judgment and granting OMU's motion.

The original Contract was executed in 1960 with supplemental agreements inked in 1969 and 1991.  At issue was whether the 1991 supplemental agreement contained language supplanting OMU's unconditional right to terminate the Contract, with four years written notice to KU ten years after January 1, 1974, contained in the 1969 supplemental agreement to the Contract.

The District Court was very clear in its ruling, holding that OMU's unconditional right to unilaterally terminate the contract, obtained under the 1969 supplement, survived any changes that KU contends were made in negotiating and executing the 1991 supplement.

Notably, the Court did not decide the issue based upon evidence extrinsic to the documents themselves.  The Court held that the original 1960 Contract, together with the 1969 and 1991 supplements comprised the whole Contract, and must be interpreted together.  The Court noted that in so doing, there was no ambiguity regarding the termination provisions of the Contract, and there being no ambiguity, the Court would decide the matter without resort to extrinsic evidence.

The Court stated, "Therefore, the Contract will be interpreted by the ordinary meaning of its terms rather than by what the parties say was intended."

KU now wants to question Carper and Tipton, and perhaps others as well, regarding the termination provisions of the Contract; what the parties intended regarding termination provisions of the Contract when negotiating the 1991 supplement; whether these persons have made any prior statements or held any opinion concerning the intent of the parties; and generally to question deponents along these lines.

OMU questions KU's right to this discovery arguing the District Court's adjudication of the parties' rights under the termination provisions of the Contract has resulted in foreclosing any claim or defense on the termination issues, thus rendering discovery thereon not relevant to any remaining clams or defenses in this action. Fed.R.Civ.P. 26(b)(1).

KU posits that since the District Court refused, upon motion by OMU, to make its ruling granting OMU summary judgment final and appealable, the language of Fed.R.Civ.P. 54(b) dictates that a non-final partial summary judgment is subject to revision at any time prior to entry of final judgment. Therefore, KU argues, the termination issue remains viable for discovery purposes.

KU also argues that discovery on the termination issue is relevant to other claims and defenses still being litigated.

Concerning whether the District Court's grant of a partial summary judgment in favor of OMU has closed further discovery on the termination provisions of the Contract, the undersigned agrees with OMU's position, at least under the circumstances that are presented here. There is no doubt the issues decided in the partial summary judgment granted herein may be revisited by the

3

Court and revised at any time prior to entry of the final judgment. That does not mean discovery as to the termination provisions may be ongoing following the ruling.

Basically, KU seeks discovery hoping to secure evidence extrinsic to the Contract documents to prove the parties' 1991 supplement to the Contract was intended to extinguish OMU's unilateral right to terminate the Contract upon four years notice, as acquired by OMU in the 1969 supplement. The weakness in KU's argument lies in the fact that the District Court's rationale completely rejected the use of extrinsic evidence in deciding the issue. It found the Contract documents "are not ambiguous", therefore to be "interpreted by the ordinary meaning of its terms rather than by what the parties say was intended" (DN 74 at p. 6). The Court remained completely within the four corners of the Contract in deciding "...the unconditional right to terminate in favor of OMU and the City" was not in conflict with nor repugnant to other termination provisions contained therein (DN 74, p. 8).

Unless and until the District Court decides the Contract provisions regarding termination rights to be ambiguous and/or its provisions regarding termination to be in conflict, KU may not utilize extrinsic evidence to prove otherwise. KU seeks discovery that would produce evidence sufficient to convince the Court of the Contract's ambiguity. KU would use the extrinsic evidence to *create ambiguity* where the Court has held none exists.

Although this Court may revise its previous ruling on summary judgment, the right to continued discovery on the termination provisions issue following that ruling does not necessarily follow. Jenkins v. Campbell, 200 F.R.D. 498, 500-501 (M.D. Ga. 2001). It is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, unless the information sought is relevant to other issues in the case. Lewis v. ACB Business Services, Inc., 135

4

F.3d 389, 402 (6th Cir. 1998); <u>Beer Nuts, Inc. v. King Nut Company</u>, 477 F.2d 326 (6th Cir. 1973).

The undersigned would view KU's motion differently were it not for the fact the District Court explicitly rejected the use of extrinsic evidence to explain away perceived ambiguities in the Contract documents. In fact, the Court ruled there were no such ambiguities. Under these circumstances continued discovery as to "what the parties say was intended" is properly denied.

This leaves the issue of whether the discovery sought is relevant to other issues in the case. KU's argument on this point is strained. KU argues, "In addition to evidence specifically relating to the intended meaning of the 1991 Amendment to the termination clause, materials produced in discovery have also begun to reveal a broader factual picture concerning OMU's <u>motives</u> for asserting many of the contractual claims raised in its Complaint, not just the termination clause issue. These materials suggest that discovery of facts concerning OMU's own interpretation of its early termination rights prior to initiating this litigation may be critical to understanding OMU's <u>motives and objectives</u> regarding many of the other contractual matters at issue in this litigation (emphasis added)." (KU Memorandum at DN 196, p. 12 [SEALED]). KU then proceeds to argue that "OMU's view of the benefits it received from the Contract began to change considerably with the coming of deregulation in the energy market" (id at p. 12-14), suggesting OMU's motivation to "break" the contract with KU might well be profit oriented – that selling excess power on the open market may well be more profitable than selling this same power to KU under the terms of the Contract.

Perhaps the undersigned doesn't understand KU's argument, but it seems axiomatic that if OMU can "break" the Contract with KU merely by exercising its unilateral right to do so, its motives and objectives in doing so are not relevant considerations. It appears to the undersigned that

5

to explore witnesses' recollections regarding negotiations surrounding the 1991 supplemental agreement as it relates to the termination provisions, or statements made or opinions held by them or others regarding the termination provisions is not relevant to other issues remaining in the case.

In ruling on these pending motions, the undersigned does not find that the requested discovery is likely to be unduly burdensome to OMU, but that the requested discovery lacks relevancy to claims or defenses that remain for adjudication at the trial court level.

KU seeks sanctions against OMU for instructing Carper not to answer certain questions and for terminating Tipton's deposition. Fed.R.Civ.P. 30(d)(4) provides in part that, "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court or to present a motion under 30(d)(4)."

Fed.R.Civ.P 30(d)(4) allows an aggrieved deponent to seek a protective order if the examination "...is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass or oppress the deponent or party." KU argues this language prevents directing a witness not to answer if the only objection is to the "relevancy" of a question, particularly when KU sought to ask a mere "handful" of questions of each deponent. The undersigned disagrees. Broadly construed, Rule 34(d)(4) would allow a motion for protective order upon the deponent being asked questions that are not "...relevant to the claim or defense of any party...", the only basis on which a party is entitled to conduct discovery in the first place. Fed.R.Civ.P. 26(b)(1). Questions to a deponent outside the bounds of relevancy are improper and could easily be construed to be in bad faith or oppressive.

OMU filed the first motion (DN 183, Motion for Protective Order, filed Dec. 16, 2006) related to this controversy, and the undersigned cannot say it was untimely filed. OMU's

objection to the line of questioning concerning the termination provisions of the Contract, as undertaken by KU, was substantially justified, and sanctions here are not appropriate.

NOW THEREFORE IT IS HEREBY ORDERED that:

1. OMU's Motion for Protective Order (DN 183) is GRANTED;

2. KU's Motion to Compel (DN 187) is DENIED;

3. KU's Motion for Sanctions (DN 188) is DENIED.

Copies:   Counsel