UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:04-CV-87-M

**CITY OF OWENSBORO and**                                            **PLAINTIFFS**
**CITY UTILITY COMMISSION OF THE CITY**
**OF OWENSBORO, KENTUCKY, a/k/a**
**OWENSBORO MUNICIPAL UTILITIES**

v.

**KENTUCKY UTILITIES COMPANY**                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion in limine by Plaintiffs, City of Owensboro and Owensboro Municipal Utilities ("OMU"), (i) to preclude employees of Kentucky Utilities Company ("KU") from testifying regarding the proximate cause of outages and derates at the Elmer Smith Generating Station ("ESGS"); (ii) to preclude such employees from testifying as to whether ESGS was operated in a good and workmanlike manner; and (iii) to preclude KU's liability expert, Robert Shepard, from testifying about any outages or derates that occurred at ESGS other than those particularly identified in his initial and supplemental expert reports [DN 413]. Also before the court is OMU's motion in limine to preclude KU's employees from testifying as to whether ESGS should have met a certain equivalent forced outage rating ("EFOR") and whether the failure to meet such EFOR establishes a failure to operate and maintain ESGS according to industry standards [DN 412]. OMU also seeks leave to file a reply to each of these motions [DN 432 and DN 433]. Fully briefed, these matters are ripe for decision.

**I. TESTIMONY OF KU'S EMPLOYEES**

OMU seeks to preclude KU's employees from testifying as to the cause of outages and

derates at ESGS and as to industry standards on grounds that such testimony must be established by an expert witness. On the same grounds, OMU seeks to preclude KU's employees from testifying as to whether ESGS should have met a certain EFOR and whether the failure to meet such EFOR establishes a failure to operate and maintain ESGS according to industry standards. As there are no KU employees that have been disclosed as experts as required by the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 26(a)(2)(A), OMU argues that they should be precluded from testifying as to each of these matters, see Fed. R. Civ. P. 37(c)(1). See also Fed. R. Evid. 701-702. KU acknowledges that it plans to call its employees as witnesses to testify as to the causes of outages at ESGS; to testify as to the industry standard for properly operating and maintaining a coal-fired power plant; and to testify as to EFOR statistics. KU argues that such testimony is factual because it is based on the personal observations, perceptions, and experiences of the witnesses in the course of their employment.

The Federal Rules of Evidence permit a lay witness to testify in the form of opinions or inferences so long as the opinions or inferences "are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Rules were amended in 2000 in order "to preclude a party from surreptitiously circumventing 'the reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing . . . .'" United States v. White, 492 F.3d 380, 400-401 (6th Cir. 2007) (quoting Fed. R. Evid. 701 advisory committee's note (2000)) (discussing the additional foundation requirement added to Rule 701 which prohibits a lay witness from testifying if his opinion is based on scientific, technical, or other specialized knowledge). The

drafters of the amendment wanted to ensure that a party does not evade expert witness disclosure requirements, id. at 401, and also wanted "'to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness . . .,'" id. at 402 (quoting United States v. Garcia, 413 F.3d 201, 215 (2d Cir. 2005)).

If KU's employees were to testify as to what they believed to be the cause of the outages and derates at ESGS and as to the industry standard, such testimony would require them to use "a process of reasoning which can be mastered only by specialists in the field." Id. at 401 (quoting State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992)). The cause of an outage at a coal-fired power plant cannot be determined with a process of reasoning familiar in everyday life. Similarly, the industry standard for coal-fired power plants is only known by those that are specialists in the field. See id. at 403-404 (holding that a lay witness Medicare auditor could neither testify as to the structure and procedures of the Medicare program nor as to the definition of a "reasonable cost" in the Medicare field because such testimony required the witness to rely "to a significant degree on specialized knowledge acquired over years of experience . . . ."); see also United States v. Figueroa-Lopez, 125 F.3d 1241, 1245-46 (9th Cir. 1997) (holding that lay witness police officers could not testify that certain behavior of a criminal defendant that they observed was consistent with that of an "experienced narcotics trafficker").    KU argues that its employees would be testifying as lay witnesses because their opinions would be based on their "experience in the course of their employment duties . . . ."[1] (KU's Resp. to Outage and Standard of Care Motion at 3.) This,

---

[1] KU cites to several cases in support of its contention that the testimony of its employees would be proper. However, those cases are distinguishable. See Tex. A&M Research Found. v. Magna Transp. Inc., 338 F.3d 394, 402-403 (5th Cir. 2003) (permitting the vice president of a company to testify as to the company's *own* damages); United States v. Munoz-Franco, 487 F.3d 25, 35-36 (1st Cir. 2007) (permitting the vice president and chief lending officer to testify as

3

however, is one of the reasons why their testimony would be considered improper lay testimony.[2] See Figueroa-Lopez, 125 F.3d at 1246 ("the bulk of the above opinion testimony is properly characterized as testimony based on the perceptions, education, training, and *experience* of the witness. It requires precisely the type of 'specialized knowledge' of law enforcement governed by Rule 702") (emphasis added). Similarly, using EFOR data to form an opinion as to whether OMU operated and maintained ESGS according to industry standards requires specialized knowledge within the scope of Rule 702.

Even though KU's employees would not be required to submit an expert report if they were designated as experts, the failure to so designate them is neither harmless nor substantially justified. Assuming, as KU contends, that OMU would not prejudiced by allowing its employees to testify as experts, this would still be an insufficient reason to permit such testimony in light of an expert disclosure error. See Sommer v. Davis, 317 F.3d 686, 692 (6th Cir. 2003). Harmlessness "'involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" Id. (quoting Vance v. United States, No. 98-5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999)). KU argues that its employees were disclosed as witnesses and such disclosure should have been sufficient knowledge for OMU to question them in their depositions regarding their

---

to the propriety of the company's *own* loans); Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1221-23 (11th Cir. 2003) (permitting officers, employees and consultants of a particular company to discuss the reasonableness of that company's *own* charges). Here, KU's employees would be testifying as to the industry standard and the causes of outages and derates regarding a *third-party* (OMU), and not their own company.

[2] KU indicates that if OMU's position is accepted, then OMU should likewise have been required to disclose as experts its employees that will be testifying as to the adequacy of OMU's operation and maintenance practices. To the extent such testimony is opinion-based rather than fact-based, it is permissible lay testimony under the case law cited by KU. OMU's employees would be testifying as to the business practices of their own company.

opinions. However, if KU's argument is accepted, it would vitiate the disclosure requirement for expert witnesses. See Fed. R. Civ. P. 26(a)(2)(A). Furthermore, there would be no reason for OMU to question KU's employees regarding their opinions or to challenge their qualifications if they were not disclosed as experts.[3] KU has failed to meet its burden in showing harmlessness or a substantial justification. See Roberts ex rel. Johnson v. Galen of Va., Inc., 325 F.3d 776, 782 (6th Cir. 2003) ("[w]e agree with the circuits that have put the burden on the potentially sanctioned party to prove harmlessness.") (citations omitted).

Because testimony opining as to the industry standard and opining as to the cause of certain outages or derates requires the testimony of an expert, KU's employees are precluded from giving such testimony. Similarly, expert testimony is required in order to opine as to whether the failure of ESGS to meet a certain EFOR fails to meet industry standards. KU's employees are also precluded from giving opinion testimony of this nature. However, KU's employees are not prohibited from testifying to matters which are factual in nature. For example, KU's employees are not prohibited from testifying as to what OMU told them was the cause of certain outages, as to the conditions they personally observed when they were present at ESGS, and to conversations that occurred between OMU and KU regarding EFOR. These matters are all factual in nature and therefore are not precluded by either FRE 701-702 or this Order.

---

[3] KU argues that OMU had sufficient knowledge of the opinion-based nature of KU's fact witnesses based on certain pre-trial disclosures made by KU. However, the disclosure to which KU cites is to a list of persons that may have discoverable information and the subject of that information. Even though KU indicates that it may use the information to support its claims or defenses does not put OMU on sufficient notice that those witnesses would be testifying as to matters that it would impermissible for them to testify to.

## II.  TESTIMONY OF ROBERT SHEPARD

OMU also seeks to preclude KU's liability expert, Robert Shepard, from testifying about any outages or derates that occurred at ESGS other than those specifically mentioned in his expert report. OMU argues that to permit him to do so would mean that his expert report did not contain "a complete statement of all opinions [he] will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  KU argues that Shepard's expert reports merely highlight some specific outages in order to illustrate the practices and problems that underlie his opinion.  Nothing in his reports suggests that these examples were intended to represent a comprehensive list of forced outages.  KU also argues that Rule 26 does not require such a comprehensive list.  According to KU, Shepard is permitted at trial to elaborate upon his professional opinion as contained in his report. See Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006).

Under Rule 26, a party using an expert witness must disclose a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  "The purpose of the rule is to eliminate 'unfair surprise to the opposing party.'" Muldrow ex rel. Muldrow v. Re-Direct, Inc., 493 F.3d 160, 167 (D.C. Cir. 2007) (citing Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995)).  However, "[s]ection 26(a)(2)(B) does not limit an expert's testimony simply to reading his report." Thompson, 470 F.3d at 1203.  Instead, "[t]he rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report."  Id.  These courts were not concerned with experts that merely elaborate upon their expert report, but experts that testify as to "a wholly new, previously unexpressed opinion." Frazin v. Haynes & Boone, LLP (In re Frazin), Ch. 13 Case No. 02-32351-bjh-13, Adv. No. 08-3021-bjh, 2008 Bankr. LEXIS 3273, at *102 n.39 (Bankr. N.D.

Tex. Sept. 23, 2008).

Therefore, it is clear that Shepard may not offer any new expert opinions. However, it is equally clear that he may elaborate and explain the opinions and findings contained in his expert report. It is not clear what Shepard's testimony will be at trial and therefore, the Court is unable to conclude at this time whether such testimony will be admissible. Therefore, the Court will rule on the admissibility of Shepard's testimony at trial.

For these reasons, **IT IS HEREBY ORDERED** that the motion in limine by OMU to exclude any KU unit outage or standard of care evidence beyond what is specifically discussed in Shepard's reports [DN 413] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the motion in limine by OMU to exclude any KU testimony that the Elmer Smith Generating Plant should have met certain equivalent forced outage rating statistics [DN 412] is **GRANTED in part and DENIED in part**.

**FURTHER**, OMU's motions for leave to file a reply [DN 432 and DN 433] are **GRANTED**.

cc:   counsel of record