**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO.: 4:04CV-87-M**

**CITY OF OWENSBORO and**
**CITY UTILITY COMMISSION OF THE CITY**
**OF OWENSBORO, KENTUCKY, a/k/a**
**OWENSBORO MUNICIPAL UTILITIES**                         **PLAINTIFFS**

**v.**

**KENTUCKY UTILITIES COMPANY**                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

On February 19, 2009, this Court issued a Memorandum Opinion and Order ("Opinion") setting forth the damages Kentucky Utilities Company ("KU") was entitled to receive in relation to the plaintiffs' underpayment for back-up energy and the plaintiffs' overcharge for NOx allowances [DN 524]. The Court subsequently entered a judgment in favor of KU on those two issues in an amount consistent with the Court's Opinion. This matter is back before the Court upon motions to alter or amend that Opinion and related judgment by both the defendant, Kentucky Utilities Company [DN 526] and the plaintiffs, City of Owensboro and City Utility Commission of the City of Owensboro, Kentucky, a/k/a Owensboro Municipal Utilities ("OMU") [DN 527]. Also before the Court is a motion by the plaintiffs to stay [DN 528]. Fully briefed, these matters are ripe for decision.

**I.  NOx ALLOWANCES**

In their pleadings, each party sought a declaration as to the ownership of 5,665 NOx Allowances that were allocated by the State of Kentucky to the Elmer Smith Generating Station ("ESGS") free of charge between 2004 and 2008. OMU, believing that they owned all NOx

allowances and that they were entitled to pass the "costs" of said allowances on to KU, charged KU for the value 3,285 allowances based on the energy allocated to KU.

The post-trial briefs submitted by the parties raised two issues with respect to the NOx emission allowances which are pertinent to the current motion : (1) whether KU's ownership share of ESGS State-Allocated NOx Allowances should be based on KU's energy allocation or its capacity allocation under the Contract; and (2) whether OMU is prohibited under the Contract from charging KU for State-Allocated NOx Allowances because it "incurred no cost" to acquire them.

In deciding the first question, the Court decided that KU's ownership share of allowances should be based on its capacity allocation under the Contract instead of energy allocation. Since the Court decided that the allowances should be based on capacity allocations, that meant KU "owned" 2,368 NOx allowances for which it had been charged. Thus, in Section II.C(1) of the Opinion, on page 9, the Court held that KU was entitled to a refund in the amount OMU charged KU for the 2368 allowances.

In deciding the second question, the Court held that the NOx allowances were costs which could be passed through under the contract even though OMU incurred 'no costs" for them. However, in reviewing the Contract, the Court found that these "costs" were not identified under the contract and thus, under Article III, Section 3(d) of the Contract, any cost not specifically identified in the Contract as either an energy cost or a capacity cost must be allocated according to the parties' capacity allocations. What followed is a sentence that perhaps causes the confusion. The Court stated, on page 11 of its opinion, that because allocating the costs of these State-Allocated NOx Allowances should be done on a capacity basis, "OMU could have properly charged KU the costs of 2368 State-Allocated NOx Allowances under the Contract." Perhaps the Court should have

said because these costs are allocated under the contract on the basis of capacity, OMU could **only** have charged KU for 2368 state-allocated allowances, and since KU already "owned" 2368 allowances, **no charge was proper.** That was the intent at least. That is why under Section II.C(1) of the opinion, the Court found KU to be entitled to a refund in the amount OMU charged KU for the 2368 allowances, and under Section II.C(2), on page 11, the Court found that KU was entitled to an additional refund for remaining 917 NOx allowances. Therefore, in the end, the Court held that KU should not have been charged at all for the allowances and that it was entitled to a full refund for the 3,285 allowances it had been charged for by OMU. Although the Court went about it in a different way than that advocated by KU, a full refund is precisely what KU wanted.

## II. INTEREST

The judgment entered in favor of KU on the issue of back up energy and NOx Allowances awarded prejudgment interest pursuant to Kentucky law. OMU contends that the federal prejudgment interest statute should apply and that the Court's judgment should be amended accordingly. Furthermore, OMU argues that if Kentucky law applies, then the Court should exercise its discretion to not award interest or at least lower the amount because the damages were unliquidated. The Court disagrees with OMU in both respects. Although the resolution of these issues required the Court to answer a substantial question of federal law, KU's recovery is essentially premised upon state law. Furthermore, the Court finds that the damages are liquidated because the amount OMU could charge for NOx allowances and the amount OMU had to pay for backup energy was set by contract and could therefore be ascertained by mere computation. Therefore, prejudgment interest pursuant to statute follows as a matter of course. OMU's motion

will therefore be denied.

### III.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions by the defendant, Kentucky Utilities Company [DN 526] and the plaintiffs, City of Owensboro and City Utility Commission of the City of Owensboro, Kentucky, a/k/a Owensboro Municipal Utilities ("OMU") [DN 527], to alter or amend are **DENIED**.  **IT IS FURTHER ORDERED** that the motion to stay by the plaintiffs [DN 528] is **DENIED as moot**.

cc:	Counsel of Record